# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | |
|---|---|
| DANNY RAY HUGHES, ) | |
| ) | |
| Movant, ) | Civil No. 11-01211-CV-W-DGK |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## ORDER DENYING MOVANT'S MOTION FOR POST CONVICTION RELIEF

Pending before the Court is Movant Danny Ray Hughes' Motion for Post-Conviction Relief pursuant to 28 U.S.C. § 2255 (Doc. 1). The Court has carefully reviewed this Motion, the Government's Response (Doc. 4), and the Movant's Reply (Doc. 30)[1] and for the reasons discussed below, this Motion is DENIED.

### Background

On April 9, 2009, a federal grand jury returned an indictment charging Mr. Hughes with: (1) conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; (2) aiding and abetting the possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); and (3) money laundering, under 18 U.S.C. § 1956(a)(1)(A)(i). On May 8, 2009, Mr. Hughes appeared with counsel and entered a plea of not guilty. Subsequently, on March 3, 2010, Mr. Hughes was appointed new counsel, Mr. John Jenab, under the Criminal Justice Act.

---

[1] The Court has also reviewed Doc. 32, which it finds to be identical to Doc. 30, and Doc. 33, which provides Exhibits.

On August 2, 2010, Mr. Hughes appeared and pleaded guilty to money laundering and to conspiracy to distribute methamphetamine. The plea agreement advised Mr. Hughes that under 21 U.S.C. § 841(b)(1)(B), the minimum penalty of imprisonment would be five years and the maximum penalty would be forty years. The plea agreement also advised Mr. Hughes of the rights he would waive through his guilty plea, including the right to appeal, collaterally attack, or challenge his conviction or sentence except in certain circumstances (Plea Agrmt. 9-11). Mr. Hughes executed the plea agreement on August 2, 2010 (Plea Agrmt. 15-16).

During his change of plea hearing, in sworn testimony, Mr. Hughes stated that he was satisfied with his counsel, had no complaints against them,[2] and that counsel had adequately advised Mr. Hughes and answered his questions (Plea Tr. 9-10). The Court then explained, and Mr. Hughes acknowledged, the charges against him and the range of punishment (Plea Tr. 12-18). Mr. Hughes also stated that he understood the process by which the Presentence Investigation Report (PSR) was compiled and acknowledged this Court's discretion in sentencing (Plea Tr. 18-19). The Court then accepted Mr. Hughes' guilty plea.

On November 23, 2010, a final PSR was issued which calculated a base offense level of 26. The PSR provided for a two-level increase for the money laundering conviction, under § 2S1.1(b)(2)(B), and a three-level reduction for acceptance of responsibility, under §§ 3E1.1(a) and (b), yielding a total offense level 25 (PSR ¶¶ 54-63). The PSR also detailed Mr. Hughes' extensive criminal history (PSR ¶¶ 64-93), including seven felony convictions, dating back to 1994, and 24 misdemeanor violations. In total, Mr. Hughes had 44 criminal history points,[3] yielding a criminal history category of VI (PSR ¶ 93). Mr. Hughes' Sentencing Guidelines range fell between 110 and 137 months imprisonment.

---

[2] Attorney Jenab was Hughes' third CJA attorney.
[3] Only 37 of the 44 points counted toward Hughes' criminal history category.

2

Through defense counsel, Mr. Hughes made a number of clarifying objections regarding his factual background (PSR Addend. November 23, 2010). One of his clarifying responses noted that his probation following a 2003 conviction for burglary should have been terminated after he paid off the remaining costs, and that the failure to do so had been an oversight. However, because no additional criminal history points were assessed as a result of this error, this oversight did not affect the Sentencing Guidelines range.

On December 23, 2010, Mr. Hughes filed a pro se motion complaining of his representation, seeking substitute counsel, and requesting a detention hearing[4] (Crim. Doc. 22). After an in camera hearing, United States Magistrate Judge John Maughmer denied the motion (Crim. Doc. 228).

On February 17, 2011, Mr. Hughes appeared for sentencing. At the outset, counsel noted that Mr. Hughes desired to clarify sections of the PSR, none of which affected his Sentencing Guidelines calculation (Sent. Tr. 2-3). At that time, the Court also acknowledged receipt of a letter from Mr. Hughes addressing these clarifications but again noting that they did not affect the Sentencing Guidelines range (*Id.* at 3-4). The Court then adopted the Sentencing Guidelines range as calculated in the PSR (*Id.* at 4-5). The Government made a verbal supplement to its downward departure motion for substantial assistance (*Id.* at 5-9), and defense counsel also urged the Court to grant the downward departure (*Id.* at 10-13).

The Court then inquired as to Mr. Hughes' satisfaction with his representation, particularly in light of his request for substitute counsel in his pro se letter (Sent. Tr. 13). Mr. Hughes stated that he was satisfied with his counsel, Mr. Jenab, and that he had no complaints. (*Id.*). After discussing the individual factors related to Mr. Hughes' sentence and noting that while Mr. Hughes played only a minor role in the conspiracy, it was important, the Court denied

---

[4] The Court cites the related criminal case, 09-00121-10-CR-W-DGK, as Crim. Doc. __.

the downward departure motion and sentenced Mr. Hughes to 135 months' imprisonment (*Id*. at 18).

Mr. Hughes did not appeal, abiding by the lawful waiver of his appellate rights contained in the plea agreement. On November 28, 2011, Mr. Hughes filed the instant motion, seeking to vacate his conviction and sentence. The Government does not dispute that the motion, though without merit, is timely under 28 U.S.C. § 2255(f)(1).

**Standard**

Title 28, section 2255 allows a district court to "vacate, set aside or correct [a] sentence" which "the court was without jurisdiction to impose . . . or . . . was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Movants are entitled to a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." *Id.* at 2255(b).

The Sixth Amendment right to counsel entitles a criminal defendant to effective assistance of counsel. In *Strickland v. Washington,* the Supreme Court laid out a two-part test for deciding a claim of ineffective assistance of counsel. 466 U.S. 668 (1984). In order to succeed on a claim of ineffective assistance of counsel, a prisoner must first show that "counsel's performance was deficient…[meaning] that counsel made errors so serious the counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense . . . [meaning] that counsel's errors were so serious as to deprive the defendant of a fair trial . . . ." *Id.* at 687.

In evaluating counsel's conduct, the court should avoid "the distorting effects of hindsight," *Strickland*, 466 U.S. at 669, and "try to evaluate counsel's conduct by looking at the circumstances as they must have appeared to counsel at the time." *Rodela-Aguilar v. United*

4

*States*, 596 F.3d 457, 461 (8th Cir. 2010) (internal quotations omitted). A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (quoting *Strickland*, 466 U.S. at 689).

## Discussion

### A. The record contradicts Movant's claims that he was given ineffective assistance of counsel.

#### 1. Mr. Jenab's alleged conflict of interest does not give rise to ineffective assistance of counsel claim.

In his first claim, Claimant argues ineffective assistance of counsel, contending that "there was a conflict of interest with Attorney John Jenab representing [him] because he also represented a witness in the District of Kansas who gave damaging evidence in [his] court case." Mr. Hughes provides no specific facts regarding the alleged damaging evidence, nor does he allege how the conflict impacted his criminal case.

Mr. Jenab confirms, in a declaration attached to the Government's motion, that he represented an individual in Kansas (Defendant 2) who had tertiary information related to Claimant's case. However, Mr. Jenab maintains that his representation of Defendant 2 did not give any rise to a conflict of interest. Specifically, Mr. Jenab declares that Defendant 2 denied knowledge of information incriminating to Mr. Hughes and did not offer evidence or testify adversely to him. Additionally, Mr. Jenab affirmed that he disclosed his representation of Defendant 2 to Claimant, and Claimant denied that Defendant 2 had any incriminating information about him. Mr. Jenab's declaration also states that Mr. Hughes voiced no objection to Mr. Jenab's continuing representation of either party. Accordingly, the Court finds that claim one is without merit, and is denied.

### 2. Mr. Jenab's failure to ask the Court for Claimant's federal sentence to run concurrently with his state sentence was not ineffective assistance of counsel.

Claimant next contends that Mr. Jenab was ineffective in failing to address whether his federal sentence should run concurrent to the state sentence imposed in Case No. 06BU-CR01855-01. Mr. Hughes argues that the sentences should run concurrently because the offense conduct in his state case was part of the ongoing money laundering for which he was charged in his federal case.

At the outset, the Court notes that Claimant's state court Buchanan County sentence was discharged on December 19, 2010, nearly two months before he was sentenced on February 17, 2011 in this case. Thus, even had the Court considered whether the conduct for which Mr. Hughes was incarcerated in state court was related to the money laundering charge, this Court could not impose a concurrent term of incarceration because there was no undischarged state sentence to which the federal sentence might be made concurrent.

Furthermore, Claimant's conclusory allegation that the conduct charged in the state case was related to the money laundering charge in federal court is without any factual basis. As the PSR indicates, Mr. Hughes was arrested in Buchanan County, Missouri for resisting arrest. Hughes has presented no evidence that this arrest was related to the instant case. In fact, if the conduct were related, this would have triggered a Sentencing Guidelines increase, raising the resulting offense level and advisory guidelines range. Thus, even assuming there was some basis for arguing that the cases were related, this would not have been in Claimant's best interest. Claim two is without merit and is denied.

### 3. Mr. Jenab's failure to raise certain objections to Claimant's PSR is not ineffective assistance of counsel.

In claims three and four, Claimant contends that Mr. Jenab failed to make objections to alleged inaccuracies in the PSR regarding his criminal history. Specifically, Claimant maintains that Mr. Jenab failed to object to two convictions which Claimant maintains are listed in the PSR in error.

The record is clear that Mr. Jenab raised all objections Claimant desired at his sentencing and noted that those objections did not impact the Sentencing Guidelines. Furthermore, Hughes raised objections to the PSR, through his pro se letters to the Court, and the Court addressed these objections at sentencing. After discussing these objections at his sentencing, Mr. Hughes stated that he was satisfied with his counsel's representations and had no complaints.

Additionally, Hughes fails to establish prejudice, meaning that there is a reasonable probability that he would have received a more favorable sentence had these objections been raised. The record is clear that this Court had the opportunity to impose a lesser sentence, but determined not to do so, not based on one or two convictions, but rather on Mr. Hughes' status as a career criminal.

Also as part of his fourth claim, Hughes seems to contend that he received an upward departure based on information obtained from a police report for his 2006 conviction. However, contrary to Hughes' assertion, the PSR notes that the information regarding the conviction was taken from court records, not a police report.

Thus, there is no evidence that Mr. Jenab failed to raise objections that Mr. Hughes thought relevant, nor is there a reasonable probability that had Mr. Jenab raised the objections

offered by Claimant in his motion, his sentence would have been reduced. Claims three and four are without merit and are denied.

### 4. Mr. Jenab's failure to file certain motions was not ineffective assistance of counsel.

In his fifth claim, Claimant contends that that Mr. Jenab was ineffective for failing to file certain motions that he requested. Specifically, Hughes states that he requested Mr. Jenab to file a motion to have him returned to state custody for a parole hearing and to request a bond. As a result of his failure to return to state custody, Hughes contends he could not file a motion under 28 U.S.C. § 2254 challenging the constitutionality of his state sentence.

Again, at the outset, we note that Hughes' stated at his sentencing hearing, on the record, that he had no complaints regarding Mr. Jenab's representation. However, even in the absence of this statement, Hughes has failed to demonstrate prejudice, or that this Court would have granted either motion. During the pretrial phase, for example, defense counsel inquired as to whether the Government would consent to Hughes returning to state court for a parole hearing. The Government noted that it would oppose any such motion given the nature of the conspiracy, the large number of participants, and Hughes' prior history of resisting lawful arrest. Additionally, Hughes was involved in plea negotiations with the Government at the time he would have requested a transfer. Because transfer to a state facility could have stalled or halted these plea negotiations, it is unlikely the Court would have granted such a request.

With regard to the bond request, Mr. Hughes was ineligible for bond while his state sentence persisted. Thus, Mr. Jenab's request would have been futile until December 19, 2010, two months prior to his sentencing. In addition, Hughes has failed to demonstrate that even had

he been eligible for bond, this Court would have granted it. Thus, the Court finds no merit to claim five and it is denied.

### 5. Mr. Jenab's alleged failure to provide Claimant with discovery was not ineffective assistance of counsel.

In his sixth claim, Hughes contends that Mr. Jenab was ineffective for failing to show him part of the discovery record. Particularly, Hughes asserts that he complained to his attorney and to the Court that he was not allowed to view part of the record and that the Judge issued no ruling on the matter.

The Court finds no reference in the record to the discovery issues raised by Hughes. However, the Court notes that this issue may have been raised and denied in an un-transcribed in camera hearing before Magistrate Judge Maughmer. Furthermore, there is no evidence that Mr. Hughes was not given access to discovery materials. In Mr. Jenab's declaration, for example, he states that he met with Claimant on multiple occasions to review discovery. While he admits that he did not allow Mr. Hughes to keep copies of discovery, this was done pursuant to an anti-dissemination policy maintained by the United States Attorney's Office for the Western District of Missouri and United States Marshals Service. This policy ensures that individuals outside of the case do not possess discovery materials and maintains the safety of individual defendants and witnesses. Accordingly, the Court finds Claimant's fifth claim without merit and it is denied.

### 6. Counsel did not err in deciding not to request a mitigating role reduction.

Claimant's seventh and final claim is that Mr. Jenab failed to advise the Court of his limited role in the conspiracy and to request a mitigating role reduction. However, like his other claims, Mr. Hughes fails to demonstrate prejudice, specifically that this Court did not consider his role in the conspiracy or that this Court would have granted a mitigating role reduction.

During the sentencing hearing, the Government stated that although Hughes had an extensive criminal history, his involvement in the conspiracy was relatively minor (Sent. Tr. 9-10). Mr. Jenab supported the Government's request for a downward departure, which was predicated on Claimant's assistance and minor role in the conspiracy. However, the Court noted that while Hughes played a minor role in the conspiracy, his role was significant. Therefore, there is no evidence that the Court did not properly account for and consider Claimant's role in the conspiracy.

In addition, Mr. Hughes cannot demonstrate that this Court would have granted a mitigating role reduction. Under the applicable case law, the mere fact that a defendant is less culpable than a co-defendant does not entitle that defendant to "minor participant" status. *United States v. West*, 942 F.2d 528, 531 (8th Cir. 1991). In fact, the Eighth Circuit has repeatedly held that merely assuming a specific limited role does not entitle a defendant to a mitigating role reduction. *See United States v. Snoddy*, 139 F.3d 1224, 1228-29 (8th Cir. 1998) (discussing applicability of mitigating role reduction in cases where defendant claimed to be merely a mule); *United States v. Williams*, 890 F.2d 102, 104 (8th Cir. 1989) ("defendant's status as courier does not necessarily mean he is less culpable than other participants in a drug operation"). Thus, the Court finds Claimant's seventh and final claim without merit, and it is dismissed.

### B. No evidentiary hearing is required.

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). "No hearing is required, however, 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Id.* (quoting

*Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)); *see also Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003) ("A § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.") (internal quotation marks omitted). No evidentiary hearing is required here because Claimant's motion is contradicted by his own testimony on the record.

### C. The Court declines to issue a certificate of appealabiltiy.

Mr. Hughes can appeal this Court's decision to the Eighth Circuit Court of Appeals only if this Court issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). Because Claimant's claims are contradicted by the record, and the merits of the claim are not debatable among reasonable jurists, this Court also declines to issue a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

### Conclusion

For the reasons discussed herein, Plaintiff's § 2255 motion is DENIED. A hearing is not warranted because the record conclusively shows that Movant is not entitled to any relief. Finally, a certificate of appealability shall not issue.

**IT IS SO ORDERED.**

Dated: July 10, 2012         /s/ Greg Kays
                             GREG KAYS
                             UNITED STATES DISTRICT JUDGE